**Armond CHOATE et al., Appellants,**

v.

**GRAND INTERNATIONAL BROTHERHOOD OF LOCOMOTIVE ENGINEERS et al., Appellees.**

**No. 15855.**

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 22, 1957.

Rehearing Denied Dec. 20, 1957.

Harris & Reeves and Robert N. Reeves, Fort Worth, for appellant.

Willis & Willis and Hart Willis, Jr., Dallas, for appellees Grand Intern. Broth. of Locomotive Engineers et al.

Barwise, Magoffin & Carrigan and Seth Barwise, Thompson, Walker, Smith & Shannon and F. B. Walker, Fort Worth, attorneys for appellees Railroads.

RENFRO, Justice.

Appellants, plaintiffs below, have appealed from an order of dismissal.

Plaintiffs were Choate, individually, and Wilson, White and McDonald, individually

and on behalf of the Rock Island members of Local No. 187, Grand International Brotherhood of Locomotive Engineers. Defendants were the Grand International Brotherhood of Locomotive Engineers, the Rock Island Railroad Company, the Burlington-Rock Island Railroad Company, and the Fort Worth and Denver City Railroad Company.

Plaintiffs' petition alleged that in 1933 an agreement was entered into and executed to regulate the work between employees of the Burlington-Rock Island, the Rock Island and the Fort Worth and Denver City Railway Companies; that the track originally owned by the Burlington-Rock Island had been leased to the other two defendant Railroad Companies; that one of the principal reasons for the agreement was due to the fact the Rock Island Railroad neither owned nor leased any track at that time; at the time of suit Rock Island owned or had under lease the majority of the track located in the area in dispute; the 1933 agreement was set out in full and detailed how crews should be manned on runs between Fort Worth and Teague; section 3–A of the agreement provided that all regular or extra crew or crews above five crews—operated in freight service in the territory between Fort Worth and Teague—would be apportioned: Burlington-Rock Island, 66⅔ per cent, Rock Island, 33⅓ per cent; since the signing of the 1933 agreement the Burlington-Rock Island had discontinued operation and its employees had been employed primarily by the Fort Worth and Denver; in 1933 there was no industrial switching between Fort Worth and Teague; the sole purpose of said agreement was to allow trains to run between Fort Worth and Teague without the necessity of changing crews because different railroads owned trackage between the two points—at that time the Rock Island and the Fort Worth and Denver were the only companies operating through trains; in the last few years the Rock Island Railway system had constructed 50 miles of track in the Dallas-Irving area, leading to industrial sites; in 1948 the local union of the Rock Island engineers entered into an agreement with the Rock Island system, whereby they were to handle the road switchers between Dallas and Irving; that an order issued by the Grand Chief Engineer of the International "refusing to allow these plaintiffs work on the Fort Worth, Dallas, Irving switchers" was void, in that it was arbitrary and capricious and violated the Constitution and the Standing Rules of the Grand International Brotherhood of Locomotive Engineers; that plaintiffs appealed the decision to the 13th Tri-Annual Convention, which ruled in effect that the work would continue to be prorated according to the 1933 agreement; that the decision of the 13th Tri-Annual in placing "said additional" trackage, constructed since 1933, under the 1933 agreement was void; that such action of the Grand International was completely arbitrary, capricious and acted as a fraud on the rights of the employees of the Rock Island; that the International had given former employees of the Burlington two-thirds of the work in a territory where the Rock Island runs 202 miles more per day than is run in the territory in which the Burlington formerly operated; plaintiffs prayed for a permanent injunction to prohibit interference with their right to perform all the work on the Dallas-Irving switchers, and their right to work on jobs performed solely on Rock Island tracks.

The defendant Grand International Brotherhood of Locomotive Engineers moved the court to dismiss or abate plaintiffs' suit for the reason it was apparent from the petition that the subject matter involved an interpretation of working agreements and involved a railway labor matter, seniority, rates of pay, rules, and working conditions, and so exclusive jurisdiction of the subject matter was, under Railway Labor Act, Title 45 U.S.Code Annotated, § 151 et seq., vested in the National Railroad Adjustment Board and that the state court had no jurisdiction.

The motion was sustained and the case dismissed.

Plaintiffs contend the court erred in granting defendant's motion to dismiss.

Section 151a, Railway Labor Act, 45 U.S.C.A., reads in part as follows: "* * * (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." Section 153, subd. 1(i) of the above act provides: "The disputes between an employee * * * and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, * * * shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

The plaintiffs' petition plead an agreement between the Local Union of the Rock Island Engineers with the Rock Island Railway System regarding the road switchers operating in the Dallas-Irving area. They also plead and set out in detail the 1933 agreement. To grant the relief sought, under the pleadings, the court would necessarily have to interpret both the 1933 agreement and the pleaded agreement of 1948. It is apparent from the petition that the carriers have continuously operated under the 1933 agreement. The interpretation of the two pleaded agreements is within the purview of the cited statutes.

■ Such being the state of the pleadings, the trial court properly held that the questions posed therein should be determined by the Adjustment Board. Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795; Brotherhood of Railroad Trainmen v. Texas & P. Ry. Co., Tex.Civ.App., 231 S.W.2d 451; Order of Railway Conductors v. Southern Railway Co., 339 U.S. 255, 70 S.Ct. 585, 94 L.Ed. 811.

■ The plaintiffs argue their dispute is with the Grand International Brotherhood of Locomotive Engineers and not with the defendant carriers. Under their pleadings, however, the carriers are necessarily involved. Brennan v. Delaware, L. & W. R. Co., 303 N.Y. 411, 103 N.E.2d 532.

Under the record, it is our opinion that exclusive jurisdiction is vested in the National Adjustment Board, and the State court has no jurisdiction of plaintiffs' suit.

The order of the trial court dismissing the suit for want of jurisdiction is affirmed.