FRED W. JONES, Jr., Judge.
Melren Oil & Gas Exploration, Inc. (“Mel-ren”) instituted a concursus proceeding to require various defendants to appear and assert their claims to funds that had accrued or would accrue as overriding royalties under assignments of a mineral lease on property in Morehouse Parish. The defendants, Pacific-Atlantic Oil Company (“Pacific”) and the Bonner-Hall Group (the other defendants), each filed claims to be recognized as entitled under the mineral lease to the funds in question. In response to Pacific’s claims, exceptions of no right of action, no cause of action and res judicata were filed.
After referring the described exceptions to the merits, trial was had and judgment rendered sustaining the exception of res judicata. There was then judgment on the merits rejecting the claims of Pacific and decreeing the Bonner-Hall Group (and two other assignees) to be owners of the well and leasehold interest involved in the con-cursus proceeding and entitled to the funds. Pacific appealed.
Over a period of years, Pacific acquired various mineral leases in several Louisiana parishes. In 1977, Pacific and its sole shareholder, James P. Spillers, were among the defendants in proceedings brought by the U.S. Securities and Exchange Commission for securities laws violations. Pacific, along with Spillers, consented to the entry of an order permanently enjoining the two from engaging in future business practices which would violate the Securities Acts. The federal court order, dated April 1977, appointed a receiver and directed him to:
“marshal, collect and take charge of all assets and property owned beneficially or otherwise by the partnerships [including Pacific].”
Moreover, the receiver was to:
“... continue and carry on or oversee the business of the partnerships in whatever manner is in the best interests of the investors in said partnerships.”
In September 1977, a supplemental order gave authority to the receiver to act with respect to all of the rights, titles and interests of the Defendants “in the lands, properties, wells, production, and other interests described or referred to in Exhibit ‘A’ attached hereto”. This exhibit specifically described numerous gas wells in More-house Parish, but did not describe the mineral lease here involved.
Thereafter, the receiver, Concannon, took control of Pacific’s interests in the described wells and for some four years received benefits from the wells for Pacific’s investors and creditors.
In June, 1981, Concannon petitioned the same federal court for authority to sell at public auction all gas well leasehold interests under his control, including the mineral lease involved in this suit. After notice to all interested parties (including Pacific) and a hearing, the federal court authorized the receiver to sell at public auction the mineral interests described in the application.
The auction was held in July 1981, and as high bidder, the Bonner Company was the purchaser of the property. Upon Concan-non’s petition, the federal court confirmed the sale by order dated August 3, 1981. The order also enjoined Pacific from interfering with the possession of the properties by the Bonner Company.
In 1984, Melren secured assignments of mineral leases from both Pacific and the Bonner-Hall Group and drilled a producing well on the property covered by the mineral lease in question.
In written reasons rejecting Pacific’s claims and ruling in favor of the Bonner-Hall Group the trial judge commented:
“Pacific-Atlantic contends that title to the Williams lease was not divested by the various Federal Court orders. It appears, however, that when the Receiver was authorized to ‘collect and take charge’ of the properties which included the Williams lease, and he did so, and the Receiver was authorized to ‘continue and carry on the business of the partnerships’, and he did so by managing and operating the Williams lease for some four years, and the Receiver was authorized to sell properties which included the Williams lease, and he did so by convey *1279 ing it to the Bonner-Hill Group (the Bonner Company), and Pacific-Atlantic, a party defendant in the proceedings, did not object or assert an adverse claim, Pacific-Atlantic was divested of title to the Williams lease.”
Pacific argues that, since Exhibit “A” attached to the federal supplemental order described only wells and not mineral leases, the receiver had no authority (as he purported to do) to sell to the Bonner Company mineral leases. Consequently, the Bonner-Hall Group purchased only mineral wells and is not entitled to the funds in this concursus proceeding.
It appears, first, that at least indirectly Pacific is requesting that we declare null and void a federal court order — confirming the sale of the mineral lease involved herein. That, of course, is not within our authority. If Pacific questions the legality of the federal court order it should contest that instrument in the proper federal forum.
Be that as it may, we note that as a result of the consent decree in the federal court proceeding, Pacific and other defendants were required to turn over their right, title and interest in affected properties to the court-appointed receiver. For a similar case, see Securities and Exchange Commission v. Bowler, 427 F.2d 190 (4th Cir. 1970).
The purpose of appointing a receiver in such suits is to remove those guilty of securities violations from positions of control and to preserve the assets of the defendant. Consequently, in this case the federal court obviously intended to have the receiver assume control of the mineral lease under consideration even though that lease was not specifically described in Exhibit “A” attached to the supplemental order. See Securities and Exchange Commission v. Keller Corporation, 323 F.2d 397 (7th Cir.1963).
Pacific was a party to the SEC suit and consented to the jurisdiction of the federal district court. Pacific was represented by counsel throughout the proceedings. It never challenged the original order, the supplemental order, or the subsequent orders authorizing and confirming the sale of the leasehold interests. Spillers was present at the auction and placed a bid on the property.
Pacific’s only action was in October 1980 when it filed a motion with the federal court seeking to have its overriding royalty interest under the mineral leases exempted from control by the receiver. These rights were recognized and specifically continued in effect in the federal court order confirming the auction sale. Pacific never claimed the proceeds of this public sale.
We conclude that the exception of no right of action should have been sustained. This exception required consideration of whether the remedy afforded by law can be invoked by this particular plaintiff. See Johnston v. Cummins, 388 So.2d 432 (La. App. 2d Cir.1980). The auction sale, confirmed by the federal district court, divested Pacific of title to the mineral lease involved in this litigation. Although we have no authority to question the validity of this sale, it does appear that the receiver had “control” over the mineral lease under consideration. Therefore, the remedy afforded by law in this case (to obtain the funds at issue) cannot be invoked by Pacific — a non-owner of the mineral lease.
With this disposition, we pretermit discussion of the applicability of the plea of res judicata.
For these reasons, we amend the district court judgment to delete the paragraph sustaining the exception of res judicata; sustain the exception of no right of action and decree that Pacific-Atlantic Oil Company is without a right of action in this con-cursus proceeding; and, as thus amended, affirm the other provisions of the district court judgment. Cost of appeal is assessed to appellant.